LANGMADE, administrator, *v.* HAMILTON *et al.*

1. To maintain a bill in a court of equity to set aside and vacate an order of the court of ordinary granting administration upon a decedent's estate, it is not sufficient to allege that the decedent, at the time of his death, was not a resident of the county in which the administration was granted. This allegation would not show affirmatively that the ordinary of that county had no jurisdiction, inasmuch as the decedent may have been a non-resident of the State, and may have left property or effects in the county in which administration was granted, so as to invest the ordinary of that county with jurisdiction. The court of ordinary being one of general jurisdiction, every presumption in favor of its jurisdiction is to be made until the want of jurisdiction appears.

2. As it is immaterial, on the question of jurisdiction to grant letters of administration, in what county the decedent died, it is no cause for setting aside a grant of administration that the applicant falsely represented to the ordinary, in his application for letters, that the intestate died in the county in which the letters were applied for and granted.

3. There being no equity in the bill as to the attack made upon the title of the administrator, and there being no other question raised broad enough to connect the complainants with all the defendants on one and the same issue, the bill, as it stands, is multifarious, and the demurrer thereto should have been sustained.

June 15, 1892. By two Justices.                    *Judgment reversed.*

Equity. Jurisdiction. Ordinary. Administration. Title. Before Judge JANES. Haralson superior court. July term, 1891.

The exception is to the overruling of the demurrer of the defendants to the bill of William and G. R. Hamilton, which alleged, in brief: Orators are the true and lawful owners of certain described land in Haralson county, which has been in their legally acquired, quiet, peaceable and uninterrupted possession for a number of years, and of those under whom they claim, by deeds of conveyance, having paid all taxes thereon for more than twenty years, no other person ever having returned the same for taxation or paid any tax thereon, or in any way asserted or claimed title thereto adverse to orators or those under whom they hold. This land was drawn by William Beck, illegitimate, of Tyson district, Washington county, in 1827, and granted to him in 1838. It had little or no market value until the town of Tallapoosa was located thereon about 1882 or 1883; and by reason of the building of the Georgia Pacific railroad through it, and by the inducements offered by orators to secure the location of the town, they were enabled to sell about twenty-five acres for building purposes, receiving reasonably fine prices and making warranty deeds. In 1884, after the vendees had erected many buildings, etc., of the probable value of $10,000,

E. S. Langmade, of Washington county, for the purpose of defrauding orators and those to whom they had sold, and for speculative purposes, filed in the court of ordinary in Washington county his application to be appointed administrator of William Beck, reciting in his petition that Beck died in that county. Orators had no notice that Langmade was expecting to claim or recover the land as administrator of Beck, until long after his appointment. There being no objection to the grant of the letters of administration, the order of appointment was passed, as a matter of course, and without any evidence as to any matter alleged in the petition; and letters of administration issued to Langmade. In November, 1884, he brought complaint for land in Haralson superior court, against Tuggle and thirteen others, to recover the town lots theretofore sold by orators, suits being filed against each of said parties separately. Orators have made to these defendants warranty deeds to the lots for which the suits were brought. At the July term, 1886, the suit against Tuggle being on trial, J. E. Henley, to whom orators had sold the land then sued for, and who really claimed and owned it, and orators, were, on their motion, made parties defendant. The case was tried and a verdict returned for the plaintiff, giving him $825, besides interest and costs, to be made from sale of the property, and a decree was entered accordingly. A new trial was granted by the judge, but this judgment was reversed by the Supreme Court. 78 *Ga.* 770. At the January term, 1887, another of the suits was tried and resulted in a verdict for the plaintiff for the premises in dispute. The defendants filed their motion for a new trial, which motion is pending. Neither orators nor any other persons whose interests were to be affected by the grant of administration in Washington county had notice of the application. Langmade produced no evidence whatever to

the ordinary of the death of William Beck, but falsely and knowingly alleged in his petition that Beck died in that county. In May, 1887, he sold to some of the other defendants to this bill, without any right or authority to do so, the timber on a large portion of the land, and these persons have proceeded to cut the same to the great damage of orators. Langmade, as administrator, has also applied to the ordinary of Washington county for leave to sell the land, which application will be granted unless restrained. William Beck was not a resident of that county at the time of his death, and the judgment granting administration to Langmade is void. This is a fact which was unknown to orators and to Tuggle and Henley at the time of the trials above mentioned, and was unknown until very recently, although orators, and the other defendants and their attorneys, had used all reasonable diligence to find evidence of this fact, but failed to do so until a few days since (June 1, 1887). This would have been a good defence against the suits brought by Langmade; and orators pray that Tuggle and Henley be permitted to join in this bill, and that Langmade and his confederates be perpetually enjoined from proceeding to collect or in any manner enforce said judgment against orators and the other parties defendant. Upon the grant by the ordinary of leave to sell the land as applied for, orators would be under the necessity of filing claims to the land at the administrator's sale, which claims they believe would be ignored by Langmade, and the land forced to sale by him, all of which would involve orators in additional suits; and for the purpose of avoiding such complications and multiplicity of suits, and because they have no adequate remedy at law, they pray for injunction against further proceeding with the application for leave to sell, and from the further prosecution of the suits brought by Langmade, and that they be

consolidated and disposed of by this bill. Orators further pray that the letters of administration be declared void, and that general relief and subpœna be granted. This bill was against Langmade, administrator, the ordinary of Washington county, and the persons to whom Langmade was alleged to have made sales. The grounds of demurrer were: No equity; adequate common law remedy; multifariousness; misjoinder of parties defendant and complainant; the question touching the revocation of the letters of administration because William Beck did not die in Washington county, can be made only before the court of ordinary of that county in a proper case.

W. F. BROWN, A. J. HEAD, and LLOYD THOMAS, for plaintiff in error.

J. M. MCBRIDE and P. H. BREWSTER, contra.